**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,          Criminal Case No. 10-20014
                                          Civil Case No. 15-12475
                                          HON. DENISE PAGE HOOD
v.

CHIRADEEP GUPTA (D-14),

    Defendant-Petitioner.

_____/

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE [#751];**
**ORDER DISMISSING CIVIL CASE NO. 15-12475;**
**and**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**

**I.    BACKGROUND**

**A. Procedural Background**

On October 26, 2012, a jury found Defendant Chiradeep Gupta ("Gupta") guilty on five counts: one count of Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1349; one count of Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h); and three counts of Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Doc # 506) Gupta was sentenced to concurrent terms of 120 months of imprisonment, followed by concurrent terms of 36 months of supervised release on each count. (Doc # 664) Gupta was ordered to pay restitution in the

1

amount of $10,164,553.00 (jointly and severally).  *Id.*   Gupta filed a Notice of Appeal on March 21, 2014.  (Doc # 665)  The appeal was voluntarily dismissed on July 11, 2014.  (Doc # 703)  On July 13, 2015, Gupta filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  (Doc # 751)  A Response and Reply were filed.  (Doc # 773; Doc # 783)  The Court held an evidentiary hearing on April 17, 2017.

**B. Factual Background**

Gupta engaged in a Medicare fraud scheme from August 2007 through September 2009.  Gupta and his co-conspirators opened up sham home health care companies; recruited patients, many of them vulnerable members of the community, by paying cash kickbacks and bribes; used physical therapists to create fictitious files to make it appear as if the patients needed and received physical therapy; and billed Medicare for physical therapy that was unnecessary or not provided.  Gupta also laundered proceeds from one of the home health care companies through shell companies that Gupta owned and controlled through others.

On July 16, 2010, the Government charged Gupta in a first superseding indictment with one count of healthcare fraud conspiracy.  (Doc # 176)  On December 7, 2010, the Government charged Gupta with the same single count of healthcare fraud conspiracy in a second superseding indictment.  (Doc # 255)  On

January 5, 2011, Gupta signed an acknowledgment of the second superseding indictment, in which he certified: "I know that if I am convicted or plead guilty, I may be sentenced as follows: Count 1: 10 years and/or $250,000 fine." (Doc # 308)

According to a Declaration of Gupta, Gupta and his attorney, Mark Kriger ("Kriger"), attended the Government's reverse proffer during which the Government set out its case against Gupta. (Doc # 751-2, Pg ID 8912) A week later, in late February 2012, Kriger informed Gupta that the Government had offered a five-year deal if he pled guilty. *Id.* Gupta asked Kriger what he thought Gupta should do. Kriger told him that the decision was his to make, but that he did not think the case against Gupta was strong. *Id.* at 8912-13. Gupta asserts that Kriger did not discuss the plea offer with him again. *Id.* at 8913.

According to Gupta, he received the Government's discovery on CDs from August 2010 through February 2012, but he could not access thirty percent of the files because they were corrupted. *Id.* at 8912. Gupta also asserts that no one reviewed the discovery material with him. *Id.* at 8913.

The Government asserts that during and after the reverse proffer, the Government provided notice that it had developed evidence of money laundering that Gupta had not yet been charged with. The Government points to an e-mail exchange between Kriger and the AUSA. (Doc # 773-1) The Government asserts

3

that it did not offer "a five-year plea" in return for Gupta's cooperation, as described by Gupta. Rather, the Government offered a 63-78 months guideline range, and the offer did not require cooperation.

On March 27, 2012, the Government charged Gupta in a third superseding indictment with one count of healthcare fraud conspiracy, one count of money laundering conspiracy, and three counts of money laundering. (Doc # 451) Gupta did not accept the plea offer by the expiration date, and the Government did not give him additional plea offers.

Gupta asserts that Kriger did not explain the possibility that he could be charged with additional crimes, did not explain the charges against him, did not review the evidence against him, did not explain the different sentence exposure he faced by pleading guilty or going to trial, did not inform him that he could have pled guilty while maintaining his innocence or that he could have pled guilty without a plea agreement, did not inform him of the high probability that others charged in the case would testify against him, and did not explain that the Government could seek a deliberate ignorance instruction at trial. (Doc # 751-2, Pg ID 8913) According to Gupta, he was not told about the third superseding indictment until months after it was filed, after the Government's plea offer had expired. *Id.* at 8914. Gupta now asserts that he would have accepted the Government's plea offer had he been informed. *Id.*

Gupta went to trial in October 2012 and maintained his innocence throughout. On October 26, 2012, a jury found Gupta guilty on all counts charged. (Doc # 506) During trial, Gupta provided testimony while under oath that this Court found at sentencing to be impeached regarding his activities in the fraud. (Doc # 749, Pg ID 8865) This Court also found at sentencing that Gupta "obstructed this investigation and prosecution by suggesting to at least one other person [to] lie or mislead investigating agents and also by destroying and causing others to destroy documents that would connect him to the fraud. And not only connect them to the fraud but that they covered up the fraud in some manner or other." *Id.* at 8864-65. Gupta was sentenced to concurrent terms of 120 months of imprisonment, followed by concurrent terms of 36 months of supervised release on each count. (Doc # 664) After sentencing, but before his report date of February 4, 2015, Gupta attempted to flee the country. On January 21, 2015, he was arrested at an airport in Newark attempting to board a flight departing for Mumbai, India. (Doc # 742) He subsequently pled guilty to contempt of court.

## II. FINDINGS OF FACT

The Court held an evidentiary hearing on April 17, 2017 regarding whether Defense Counsel Kriger advised Gupta that if Gupta did not accept the plea offered by the Government, a third superseding indictment or further charges would be filed against Gupta.

Gupta testified that Kriger was his chief attorney in the criminal case, and that their main mode of communication was via e-mail. Kriger would forward him most of the e-mails that Kriger received from the Government regarding the case, and Kriger would also blind carbon copy Gupta on many of Kriger's emails to the Government.

Gupta testified that he attended the reverse proffer on February 22, 2012 with attorneys Kriger, DeDay LaRene ("LaRene"), and Raj Sutariya. He was very nervous because there were three prosecutors and seven to ten FBI agents there. Gupta testified that Kriger received a phone call regarding another matter and left the reverse proffer right as it was about to begin. At the reverse proffer, the Government showed Gupta evidence against him, much of it in the form of checks. Gupta testified that he recalled profit-sharing checks. However, Gupta testified that he did not know that the Government was considering bringing money laundering charges against him because he received so many bank records that it was not clear to him.

In late February 2012, shortly after the reverse proffer, Gupta received several emails from the Government discussing money laundering evidence against him. A February 28, 2012 e-mail from the Government, which Kriger forwarded to Gupta the next day, states as follows.

> We now have the bank records for Anthem Management and Investment company analyzed. The only checks going in are the two

> from All American, which our witnesses will testify were Gupta's share of the fraud proceeds at that home health agency. There are no other deposits.
>
> The money then goes out mostly in checks to Paramount Consulting (owned by one of Gupta's co-conspirators) and to Unicare (owned directly by Gupta). There are a few debit card transactions as well, but they are not terribly meaningful. In short, Anthem was a laundering vehicle to conceal Gupta's receipt of his share of the proceeds from the fraud scheme at All American. We'll get those Anthem records off to you soon.
>
> I look forward to getting Mr. Gupta's decision regarding a plea on Friday.

(Gov't's Exh. 12) A February 29, 2012 e-mail from the Government, which Kriger forwarded to Gupta that same day, states as follows.

> Here are the Anthem Management bank records. They are not too voluminous. You will see that there are only two significant deposits, from All American (Gupta's profit). The large majority of the withdrawals are checks to Paramount ($5000) and Unicare ($10,000 – for "PT services" for a management and investing company that provided no health care services). There is also a check to Tilesh Patel, who as we told you, was Gupta's friend and a launderer for others in the conspiracy. Interestingly, there is a $250 check to TM Accounting services for tax services, a company owned by Tariq Mahmud who was just convicted last month of health care fraud (he had an accounting business on the side).

(Gov't's Exh. 13) This e-mail included the bank records as two attachments.

Gupta testified that he met with Kriger within one week of the reverse proffer, also in late February 2012. Kriger told him at this meeting that his maximum sentence exposure was 10 years, and that the Government had proposed a plea offer for approximately five years. Kriger told him that it was up to him

7

whether or not to accept the plea. Kriger also advised that it was a very triable case, explaining that the Government did not have strong evidence against Gupta, that none of his physical therapists were indicted or interviewed, that his partner was not indicted, and that there was not much of a difference in sentence exposure between going to trial or accepting the plea offer. Gupta testified that, after this meeting, his attorneys did not discuss a plea offer with him ever again.

On March 12, 2012, Kriger received another e-mail from the Government, stating as follows.

> As per our discussion this afternoon, Mr. Gupta had decided not to plead. From this point forward, we will not agree to a rule 11 . . . nor will we agree to a three level reduction for acceptance of responsibility if he changes his mind.
>
> Further, we will be proceeding with the money laundering charges by the end of the month . . . .

(Gov't's Exh. 1)

On March 24, 2012, Kriger wrote: "Also per our conversation the other day about Gupta, would you mind sending me all of the guideline factors that play into plea vs. trial so that I make sure I render effective assistance of counsel in the plea bargaining process. In other words how you arrive at the two ranges." (Gov't's Exh. 2) On March 26, 2012, the Government responded:

> [If the money laundering charges are included,] his overall offense level would be either 36 (188-235 months) or 38 (235-293 months). With the additional charged [sic] each adding up to 20 years per each count, there will be no statutory cap on a sentence in either of this

8

> [sic] ranges. If he agreed to plea by the end of the week, he would plead to one count of conspiracy to commit healthcare fraud. We could justify a lower loss range ($2.5 million to $7 million). So the guidelines would be calculated this way: 6 + 18 + 2 (sophisticated means) + 3 (manager role) – 3 (acceptance of responsibility). His overall offense level would be 26 (63-78 months). If he pled to health care fraud conspiracy, his max sentence would be capped at 10 years. His mulling of this plea offer has dragged on too long. If he does not accept it by Friday (3/31) at noon, his only plea-trial option would be to plead straight up, and I will not agree to a 3 level reduction for acceptance.

*Id.*

Gupta testified that he did not receive this March 26th e-mail, and there are no records showing that he did. Gupta testified that Kriger never reviewed this information with him, and that Kriger never informed him that if he did not accept the plea offer, the Government could file another superseding indictment bringing more charges against him. Gupta testified that he was not informed of the deadline to accept the plea offer either, and that he was never provided with a written copy of any plea agreement. Gupta testified that, although the Third Superseding Indictment was filed on March 27, 2012, he did not learn of its existence until September 19, 2012, shortly before trial. Gupta testified that, if Kriger had reviewed the aforementioned information with him, then Gupta would have accepted the plea offer before the deadline and not gone to trial because of the significant difference in sentence exposure.

Kriger and LaRene's testimony at the evidentiary hearing conflicts with Gupta's testimony. Kriger testified that he attended the reverse proffer on February 22, 2012, but he could not recall much of the discussion. Kriger does specifically recall that the additional money laundering charges and evidence were discussed. He recalls seeing at least one important document that was part of the money laundering evidence that the Government shared. Kriger testified that it is possible that he left the reverse proffer early, but not before it began as Gupta testified.

Kriger testified that he had a conversation with Gupta regarding the plea offer during which he told Gupta that if he did not accept the plea offer before March 31, 2012, then the Government could file another superseding indictment and bring additional charges against him. Kriger testified that Gupta told him that he did not want to accept the plea offer. This conversation took place sometime after the reverse proffer, but before the March 12, 2012 e-mail from the Government (Gov't's Exh. 1).

Kriger testified that he asked the Government to keep the plea offer open for some additional time so that he could have further discussions with Gupta about taking the plea, and the Government agreed to keep the offer open until April 3, 2012 at noon. That is why Kriger received an e-mail from the Government on April 3, 2012 stating, "It is past noon. The deal is off the table and will not be put

back on." (Gov't's Exh. 16) Kriger testified that the purpose of his March 24, 2012 e-mail to the Government asking for sentencing guideline factors (Gov't's Exh. 2) was precisely so that he could discuss with Gupta the difference in sentence exposure if the Government brought additional money laundering charges against him. Kriger testified that he recalls discussing this information with Gupta. Kriger testified that he did not accept the plea offer before the April 3, 2012 expiration date because Gupta told him that he did not want to accept the plea offer.

Attorney LaRene also testified at the evidentiary hearing. He does not recall attending the reverse proffer, but he testified that he knows that he did attend because he took notes during the reverse proffer. LaRene testified that the notes are in his handwriting except for the last page. (Gov't's Exh. 4) Page 9 of LaRene's notes states, "Profit-sharing checks sequential." LaRene testified that this refers to checks that were referred to by the prosecutors during the reverse proffer. Page 14 of LaRene's notes states, "GLS." LaRene testified that the notes below the "GLS" heading appear to represent statements by the Government about their position as to the sentencing guidelines. LaRene testified that his short-hand at Page 14 states as follows.

> If trial health care fraud conspiracy . . . Will supersede . . . If laundering and then below that there are enhancements that might be applicable under money laundering guidelines, four level increase in the offense level for conviction under 18 U.S.C. Section 1956 plus a

11

> two-level increase for sophisticated money laundering total of adjusted offense level of 34 and a guideline sentencing range of 151 to 181 months.

LaRene testified that his short-hand at Page 15 states as follows.

> If pleads guilty. Adjusted offense level of 24, a role in the offense, and upward adjustment of role in the offense of three levels. Two level offense adjustment of sophisticated means. A three level reductions for acceptance of responsibility which yields a final adjusted offense level of 26 and a guideline sentencing range of 63 to 78 months . . . Respond by 2/29.

La Rene testified that his notes reflect the information provided by the Government at the reverse proffer, but he has no recollection of the discussion.

Having conducted an evidentiary hearing, including an assessment of the credibility of the witnesses, the Court concludes that much of Gupta's testimony, upon which he relies entirely, is not credible. Kriger's testimony, taken together with LaRene's testimony and reverse proffer notes, and taken together with the various emails in evidence to and from the Government, is sufficient to rebut Gupta's testimony. The Court also notes that Gupta has lied to this Court on more than one occasion. He provided testimony under oath that this Court found to be impeached. He obstructed his investigation and prosecution by suggesting to at least one other person to lie or mislead investigating agents and also by destroying and causing others to destroy documents. Gupta also lied to this Court when he promised to obey the conditions of his release. He later pled guilty to contempt of court after being caught attempting to flee the country after his sentencing.

Specifically, the Court finds that the following sworn statements by Gupta are false. Gupta's testimony that he did not know that the Government was considering bringing money laundering charges against him is not credible. Gupta's testimony that Kriger did not discuss the plea offer with him again after their meeting in late February 2012 is not credible. Likewise, Gupta's testimony that Kriger never reviewed the difference in sentence exposure without and with the additional money laundering charges; that Kriger never informed him that if he did not accept the plea offer, the Government could file another superseding indictment bringing more charges against him; and that Kriger did not inform him of the deadline to accept the plea offer is not credible. Gupta's assertion that he would have accepted the plea offer before the deadline because of the significant difference in sentence exposure is also not credible.

Rather, the Court finds that the Government discussed the money laundering evidence against Gupta, as well as the possibility that they would file another superseding indictment bringing additional money laundering charges against Gupta, as well as the difference in sentence exposure at the reverse proffer on February 22, 2012. Gupta subsequently received several e-mails regarding money laundering evidence against him. Kriger then met with Gupta in late February 2012 or March 2012 and told Gupta that if he did not accept the plea offer before March 31, 2012, then the Government could file another superseding indictment

and bring further money laundering charges against him. Gupta told Kriger that he did not want to accept the plea offer. Later in March 2012, after asking the Government to keep the plea offer open longer, and to send him additional information about the sentencing guideline factors, Kriger again discussed the plea offer with Gupta as well as the difference in sentence exposure if the Government brought additional money laundering charges against him. Gupta again decided that he did not want to accept the plea offer, and the offer expired on April 3, 2012.

## III. ANALYSIS

### A. Standard of Review

Section 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). Under the Sixth Amendment, a defendant has a right to "have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction .

> . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id.* "There is a strong presumption that legal counsel is competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). In addition, a "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant bears the burden of showing that counsel was so deficient and that prejudice resulted from counsel's errors. *Id.* at 686-87.

The *Strickland* test applies in the plea-bargaining context. *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003). In *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that to establish an ineffective assistance of counsel claim in the plea-bargaining process, the defendant must show not only that counsel was deficient, but that the outcome of the plea-bargaining process would have been different with competent advice. *Lafler*, 132 S. Ct. at 1384 (citing *Frye*, 132 S. Ct. at 1388-89). In *Frye*, the

15

Supreme Court held that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. 132 S. Ct. at 1408. The Constitution requires defense counsel to convey all plea offers to the client and to allow the client to consider all plea offers, and defense counsel is ineffective when defense counsel fails to do so. *Id.* The defendant must then show prejudice, a reasonable probability that the earlier plea offer would have been accepted by the defendant, had the defendant been informed of the plea offer. *Id.* at 1409. A defendant must also demonstrate that the prosecution would not have canceled the offer or that the trial court would have accepted the plea. *Id.* The defendant must show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Id.*

The Sixth Circuit has held that effective assistance of counsel requires more than just conveying a plea offer:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure conviction, discuss the evidence as it bears on those elements, and explain the sentence exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003). Although some circuits have held that a defendant must support his own assertion that he would have accepted the plea offer with additional objective evidence, the Sixth Circuit has declined to adopt such a requirement. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). The Sixth Circuit has also held that a defendant's declarations of innocence before and during trial are not dispositive on the question of whether a defendant would have accepted the Government's plea offer. *Id.* at 738.

**B. Defense Counsel's Performance in the Plea-Bargaining Process**

After reviewing the parties' arguments, briefs, and evidence, the Court concludes that Defense Counsel's performance in the plea-bargaining process was reasonable. Kriger conveyed the plea offer to Gupta on more than one occasion and allowed him to fully consider it. As discussed above, Gupta was well informed of the money laundering evidence against him, the possibility that money laundering charges would be brought against him if he did not plead guilty by March 31, 2012, and the sentence exposure he faced as a consequence of exercising each of the options that were available to him. Gupta ultimately made an informed decision not to accept the plea offer and proceed to trial. As the Court noted above, after considering the testimony at the evidentiary hearing, the parties' submissions, and the Court's own observations during the trial and the evidentiary hearing, Gupta's assertion that he would have accepted the plea offer because of

the significant difference in sentence exposure is not credible.  Under these circumstances, the Court concludes that Gupta has not met his burden of showing that Defense Counsel's performance was constitutionally deficient, or that there is a reasonable probability that, but for Defense Counsel's unprofessional errors, the result of the plea-bargaining process would have been different.

**D. Summary**

Based on the above analysis, the Court finds that Gupta has failed to show that his trial counsel's performance was deficient under either prong of the *Strickland* test.  Gupta is not entitled to relief under 28 U.S.C. § 2255.

**IV. CERTIFICATE OF APPEALABILITY**

Rule 22 of the Federal Rules of Appellate Procedure provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253(c)(2).  Rule 11 of the Rules Governing Section 2255 Proceedings requires that a district court issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  If a court issues a certificate of appealability, the court must state the specific issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  28 U.S.C. § 2255(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

For the reasons set for above, the Court finds that a certificate of appealability will not be issued in this case since the arguments raised by Gupta in his § 2255 Motion are without merit.

V.  CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 10-20014, Doc # 751, filed July 13, 2015]** is **DENIED**.

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Civil Case No. 15-12475]** is **DISMISSED with prejudice.** The case is designated as **CLOSED** on the Court's docket.

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

Dated: August 23, 2017         s/Denise Page Hood
                               Chief, U.S. District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2017, by electronic and/or ordinary mail.

                   s/Julie Owens
                   Acting in the absence of LaShawn Saulsberry
                   Case Manager